**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Brotherhood of Maintenance of Way Employees,

Plaintiff,

Civ. 00 CV 1852

v.

**ORDER**

Burlington Northern Santa Fe Railroad,

Defendant.

---

O'Donnell, Schwartz & Anderson, P.C., by RICHARD S. EDELMAN, Washington, DC, and Charles A. Collins, P.S., by CHARLES A. COLLINS, St. Paul, Minnesota, appeared on behalf of Plaintiff, Brotherhood of Maintenance of Way Employees.

Burlington Northern Santa Fe, by CHARLES W. SHEWMAKE, Forth Worth, Texas, and Spence, Ricke, Sweeney & Gernes, by PATRICK J. SWEENEY, St. Paul, Minnesota, appeared on behalf of Defendant Burlington Northern Santa Fe Railway Company.

---

This matter comes before the Court on Defendant Burlington Northern Santa Fe Railway Company's ("BNSF") Fed. R. Civ. P. 12(b)(1) motion to dismiss the Complaint of Plaintiff Brotherhood of Maintenance of Way Employees ("BMWE") for lack of subject matter jurisdiction. Based on a review of the pleadings and upon hearing Oral Argument on the matter, for the reasons stated below, the Court will grant Defendant's motion.

## BACKGROUND

BMWE, an unincorporated labor organization headquartered in Southfield, Michigan, is the designated representative for collective bargaining of employees of BNSF, a rail carrier, working in the class or craft of maintenance of way employee. This dispute involves a collective bargaining agreement ("CBA") between the parties that was entered into on August 12, 1999 ("August CBA") and remains in effect.

The underlying dispute centers around whether Article A of the August CBA requires BNSF to provide a $15.00 per day meal allowance for five days (Monday through Friday) or for four days (Monday through Thursday) when an employee works a five day week (Monday through Friday) at a location greater than seventy-five highway miles from both the employee's residence and home station, and utilizes Carrier provided lodging while away from home for four

FILED JAN 24 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD JAN 24 2001

nights (Monday night through Friday morning). According to the Plaintiff's Complaint, the "pertinent part" of the August CBA is as follows:

> Section 1
>
> Employees force assigned to a headquartered position which is located greater than 75 highway miles from both the employee's residence and the employee's home station will be eligible for double occupancy lodging under the BNSF corporate lodging program on each day service is performed at the away-from-home headquarter location. Employees utilizing Carrier provided lodging under this provision will receive a meal allowance of $15.00 for each day on which service is performed and the employee is housed at Carrier expense at the away-from-home headquarter location.

(Compl. at ¶ 6.) BMWE asserts that the agreement requires five days of meal allowances, while BNSF's position is that it requires only four days of meal allowances.

According to the Plaintiff's Complaint, from August 1999 until sometime in February 2000, BNSF provided meal allowances to employees in accordance with BMWE's interpretation of the August CBA. In February 2000 BNSF began to deny some employees five days worth of meal allowances because "certain BNSF managers were taking the position that BNSF was not obligated under Article A of the August 12, 1999 Agreement to provide five days worth of meal allowances." (Compl. at ¶ 9.) Plaintiff's Complaint describes numerous communications the parties had regarding the meaning of Article A of the August CBA. For example, on March 31, 2000, the General Director of Labor Relations for BNSF wrote to the BMWE General Chairman stating that "it was indeed BNSF's position that, under Article A of the August 12, 1999 Agreement, an employee who stayed in Carrier provided lodging from Monday night through Friday morning was only entitled to four days of meal allowances, Monday through Thursday." (Compl. at ¶ 10.)

The parties held meetings and exchanged additional communications regarding meal allowance payments under the August CBA, but were unable to resolve their disagreement regarding the requirements of the agreement. Plaintiff filed this action asserting that BNSF has effected a unilateral change of the August CBA in violation of the Railway Labor Act and requests relief from the Court. Plaintiff's sole allegation is that BNSF refuses to pay meal per

diems in accordance with the August CBA. BNSF filed a motion to dismiss the Complaint for lack of subject matter jurisdiction.

**DISCUSSION**

This action is governed by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq. "Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203 (1994). Pursuant to the RLA's dispute resolutions procedures, disputes between railroads and their employees are classified as either major or minor disputes. *See Consol. Rail Corp. v. Ry. Labor Executive's Ass'n*, 491 U.S. 299, 302-21, 109 S.Ct. 2477, 2480-90, 105 L.Ed.2d 250 (1989) (hereinafter *Conrail*); *Bhd. Ry. Carmen v. Mo. Pac. R.R. Co.*, 944 F.2d 1422, 1426 (8th Cir. 1991). Major disputes concern the creation of new contractual rights, while minor disputes involve the enforcement, "interpretation or application of an existing agreement." *Bhd. Ry. Carmen*, 944 F. 2d at 1426; *see also Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723-24, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945); *Schlitz v. Burlington N. R.R.*, 115 F.3d 1407, 1413 (8th Cir. 1997).

Minor disputes are subject to "compulsory and binding arbitration" before the National Railroad Adjustment Board, or before an adjustment board established by the employer and the unions representing the employees. *Conrail*, 491 U.S. at 303, 109 S.Ct. at 2481; *Schlitz*, 115 F. 3d at 1413-14. Those adjustment boards have exclusive jurisdiction over minor disputes. *Conrail*, 491 U.S. at 304, 109 S.Ct. at 2481. Therefore, the Court lacks jurisdiction to resolve minor disputes, which "must be resolved only through the RLA mechanisms." *Jenisio v. Ozark Airlines, Inc. Retirement Plan for Agent and Clerical Employees*, 187 F.3d 970, 973 (8th Cir. 1999) (quoting *Hawaiian Airlines, Inc.*, 512 U.S. at 253, 114 S.Ct. at 2244). The decisive issue in this case, thus, is whether the controversy involves a major dispute or a minor one.

The Eighth Circuit has repeatedly said that a party carries a "relatively light burden" in establishing exclusive arbitral jurisdiction under the RLA. *See, e.g., Jenisio*, 187 F.3d at 973; *Schlitz*, 115 F.3d at 1414; *see also Conrail*, 491 U.S. at 307, 109 S.Ct. at 2482 (citations

omitted). There is a presumption that disputes between employers and their unionized employees are minor and thus arbitrable. *See Jenisio*, 187 F. 3d at 973. "[W]hen in doubt, the courts construe disputes as minor." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 19 v. Soo Line R.R.*, 850 F.2d 368, 377 (8th Cir. 1988) (en banc) (citation omitted); *see also, e.g., Schlitz*, 115 F.3d at 1414 (holding that if doubts arise as to the type of dispute at issue, the court should construe the dispute as minor); *Alton & S. Lodge No 306 Bhd. Ry. Carmen v. Alton & S. Ry. Co.*, 849 F.2d 1111, 1113 (8th Cir. 1988) ("When the surrounding circumstances are ambiguous, the courts favor construing disputes as minor.") (hereinafter *Alton*).

In general, disputes "'grounded in the CBA' are subject to arbitration" under the RLA. *Jenisio*, 187 F.3d at 973 (quoting *Hawaiian Airlines*, 512 U.S. at 256, 114 S.Ct. 2239). "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is *arguably justified* by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major." *Conrail*, 491 U.S. at 307, 109 S.Ct. at 2483 (emphasis added); *see also Bhd. Ry. Carmen*, 944 F.2d at 1427. It is not the Court's role to decide the merits of the parties' dispute; rather the Court "is limited to determining where the 'arguably justified' line is drawn." *Conrail*, 941 U.S. at 318-19, 109 S.Ct. at 2489; *Sys. Bd. 46, Transp. Communications Union v. Burlington N. R.R. Co.*, 838 F. Supp. 1342, 1345 (D. Minn. 1993); *see also Bhd. Ry. Carmen*, 944 F.2d at 1427 ("The court's role, thus, is not to interpret that agreement, but merely to determine whether the case 'implicates a question of contract interpretation.'") (citation omitted). Moreover, the major and minor dispute distinction "does not turn on a case-by-case determination of the importance of the issue presented," rather the demarcation turns on whether "a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action." *Conrail*, 491 U.S. at 305, 109 S.Ct. at 2481 (citations omitted).

BNSF contends that the August CBA arguably justifies providing meal allowances for four days when an employee works five days at a location greater than seventy-five highway miles from both the employee's residence and home station, and utilizes Carrier provided

lodging while away from home for four nights. The case turns on whether BNSF is correct in its contention that its actions are arguably justified.

The August CBA provides that "Employees utilizing Carrier provided lodging . . . will receive meal allowance of $15.00 for each day on which service is performed *and* the employee is housed at Carrier expense at the away-from-home headquartered location." (Compl. at 6 (emphasis added).) BNSF's interpretation of this provision as providing a BMWE member with four days of meal allowances when that member is housed at BNSF's expense for four days during a week is arguably justified under the terms of the August CBA. In essence, it is arguably justified that the CBA could be interpreted to mean that two conditions must be met in order to receive a meal allowance: service must be performed and the employee must be housed at BNSF's expense. It is arguably justified to interpret the provision are requiring five days of service and five days of housing at BNSF's expense to qualify for five days of the $15.00 per diem.

BMWE counters that BNSF's past practices, as outlined in the Complaint, belies its asserted interpretation of the August CBA, such that BNSF's position is frivolous and otherwise in bad faith. A party's introduction of evidence of past practice is not dispositive on the question of whether a dispute is major or minor. *See Alton*, 849 F. Supp. at 1114 . While BMWE's "allegations concerning implied terms created by past practices may carry the day in arbitration, they do not persuade the court that [BNSF's] contractual arguments are frivolous or insubstantial." *Sys. Bd. 46, Transp. Communications Union*, 838 F. Supp. at 1345; *see also Alton*, 849 F.2d at 1114.

Finally, BMWE argues that whether BNSF successfully made a facial or factual 12(b)(1) attack controls the Court's decision and that the Court must hold an evidentiary hearing to determine if the dispute is major or minor. The Court does not agree. It is true that a "court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack,'" *Osborn v. U.S.*, 918 F.2d 724, 729 n.6 (8th Cir. 1990), and that "[i]f necessary, the district court can hold a hearing at which witnesses may testify," *Id.* at 729. The Eighth Circuit

in *Osborn* explained the significance of the facial/factual distinction:

> In the first instance, the court restricts itself to the face of the pleadings, and the nonmoving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In a factual attack, the court considers matters outside the pleadings and the non-moving party does not have the benefit of 12(b)(6) safeguards. . . . In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* (citations and internal quotations omitted).

It is clear to the Court on the face of the Plaintiff's Complaint that the dispute is minor. The Complaint, itself, quotes the CBA as authority for the employees' rights. *See Conrail*, 491 U.S. at 305, 109 S.Ct. at 2482 ("To an extent, then the distinction between major and minor disputes is a matter of pleading. The party who initiates a dispute takes the first step toward categorizing the dispute when it chooses whether to assert an existing contractual right to take or to resist the action in question."). Thus, as BMWE argued, the Court will treat BNSF's motion as a facial attack and finds that, based on the pleadings, BMWE can prove no set of facts that support BMWE's contention that the dispute is major.[1] The Court further finds that an evidentiary hearing into this matter is not necessary for the Court to ascertain that it does not have subject matter jurisdiction over the dispute presented.

In the end, the parties' dispute centers on how the August CBA should be interpreted to control the controversy. Thus, the dispute is minor because it is "grounded in the CBA," *Hawaiian Airlines*, 512 U.S. at 256, 114 S.Ct. 2239, and its resolution "will depend at least in part on interpretation of the applicable collectively bargained agreement." *Landried v. Terminal R.R. Ass'n*, 721 F.2d 254, 255 (8th Cir. 1983). Because the dispute is minor, the Court has no

[1] Although the Court, through a separate Order, allowed BNSF to supplement the record with additional portions of the August CBA, the Court did not rely on BNSF's supplemental materials in determining this is a minor dispute. Rather, the Court relied on the provisions of the August CBA quoted by Plaintiff in the Complaint.

subject matter jurisdiction over BMWE's claims and will grant BNSF's motion to dismiss the Complaint.[2] *See generally Jenisio*, 187 F. 3d at 974 (affirming the District Court's dismissal for lack of subject matter jurisdiction).

* * *

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED and the Complaint is DISMISSED for lack of subject matter jurisdiction.

DATED: January 24, 2001

DONALD D. ALSOP, Senior Judge
*United States District Court*

[2] The Court decides only the narrow question of whether BNSF met the burden of persuading the Court that its conduct is arguably justified by the August CBA. The Court does not suggest which party is entitled to prevail before the adjustment board on the merits. *See Bhd. Ry. Carmen*, 944 F.2d at 1429.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: JAN 24 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995